UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>   Plaintiff,<br>   v.<br>**DAMION SLEUGH**,<br>   Defendant. | Case No. 14-cr-00168-YGR-2<br><br>**PRETRIAL ORDER NO. 2 RE: MOTIONS *IN LIMINE*** <br>Re: Dkt. Nos. 87, 89, 91, 93, 100 |

Jury selection in the instant case is set for June 29, 2015. Defendant Damion Sleugh stands accused of involvement in a drug deal that culminated in robbery and murder. He allegedly stole marijuana from the victim and then shot him. Sleugh is charged with robbery affecting interstate commerce, felon in possession of a firearm, and various drug-related offenses, including using/carrying a firearm during or in furtherance of a drug trafficking crime and use of a firearm during a drug trafficking crime causing murder. (Dkt. No. 1.)

The parties have resolved a number of pre-trial issues. (Dkt. No. 96.) Six motions *in limine* are pending before the Court. This Order resolves five of the six. "A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Under appropriate circumstances, a motion *in limine* may be used to exclude inadmissible or prejudicial evidence before it is offered at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

Having considered the papers submitted and the arguments of counsel at the June 12, 2015 hearing, and good cause shown, the Court rules as follows:

## I. DEFENSE MOTIONS

Both of the defendant's motions seek to exclude the government's proposed expert testimony and underlying documentation. The first motion pertains to DNA testing and the second to firearm and ballistics testing.

Under Federal Rule of Evidence 702, an expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Such evidence must also be relevant pursuant to Federal Rule of Evidence 401 and may be excluded pursuant to Rule 403.

Trial judges are charged with the responsibility of acting as gatekeepers to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In order to fulfill this function as to scientific testimony, the trial court "must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue." *Daubert*, 509 U.S. at 580. However, the court has the "discretionary authority . . . both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Thus, while "a separate, pretrial hearing, outside the presence of the jury" may be advisable in certain circumstances, "trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function." *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000).

### A. DNA Testing

The defendant moves to exclude the pertinent DNA test results and, alternatively, requests a *Daubert* hearing as to the government's forensic serologist Amy S. Lee, who conducted the testing and is an anticipated trial witness. (Dkt. No. 87.) The defendant's attack focuses on the size of the sample, which the defendant claims constitutes "low copy number" (or "LCN") DNA.

1  The defendant argues the resulting findings are therefore inherently unreliable. The government
2  opposes the motion. (Dkt. No. 103.)

3  The victim, Vincent Muzac, was found dead in a parking lot in Oakland on December 22,
4  2013. A bag containing approximately one pound of marijuana was found under his left leg. The
5  bag was swabbed for DNA and the sample sent for testing.

6  Amy Lee at the Serological Research Institute ("SERI"), which undertook the analysis and
7  comparison, prepared a report of her findings. (June 5, 2014 SERI Report ("SERI Report").) As
8  to the sample in question, both the victim and defendant Sleugh were identified as "possible
9  contributors" to the DNA mixture. (*Id*. at 5.)

10  The DNA analysis and comparison was conducted using the Polymerase Chain Reaction
11  ("PCR") method. PCR amplification involves replicating available DNA strands to create a larger
12  sample to be used during genetic marker analysis. (*See* SERI Report at 1.) According to the
13  defendant, the sample at issue, prior to amplification, included less than 40 picograms of DNA.
14  The government does not controvert this interpretation of the data.

15  The defendant does not challenge the proposed expert's qualifications or the longstanding
16  and generally acceptable methodology of PCR amplification and comparison testing of DNA
17  samples. Instead, the defendant's challenge centers on one particular concern—the size of the
18  sample at issue. The defendant argues that, as a matter of law, "low copy number" DNA samples[1]
19  produce inherently unreliable comparison results and, therefore, must be excluded from evidence
20  or, in the alternative, warrant a *Daubert* hearing in all circumstances to determine whether the
21  resulting findings were reliable. The defendant has not provided any binding authority—or,
22  indeed, any legal authority—finding as a matter of law that a small sample size results in data that
23  is inherently unreliable. At most, the defendant's authority suggests there may be a correlation

---

[1] According to the defendant's cited scientific authority, DNA samples of fewer than 100 picograms are referred to as "low copy number" DNA. However, the legal authority provided by the defendant does not establish a precise definition for LCN DNA. *See, e.g.*, *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1278 (D.N.M. 2013) ("The focus for the Court, however, is not to establish a definition of 'LCN testing,' but to determine whether the Government's DNA results in this case are reliable and admissible.").

between sample size and the frequency of stochastic effects—randomized errors resulting from contamination that could potentially render a comparison unreliable. *See McCluskey*, 954 F. Supp. 2d at 1277 ("LCN testing carries a greater potential for error due to difficulties in analysis and interpretation caused by four stochastic effects: allele drop-in, allele drop-out, stutter, and heterozygote peak height imbalance."); *see also United States v. Morgan*, 53 F. Supp. 3d 732, 743 (S.D.N.Y. 2014) ("Although the presence of stochastic effects tends to correlate with DNA quantity, it is possible that a 14-pg sample may exhibit fewer stochastic effects than a 25-pg sample and therefore provide better results."). However, as the defendant's own authority explains, *McCluskey*, 954 F. Supp. 2d at 1278, the critical inquiry remains whether there is evidence of unreliability (e.g., stochastic effects) in a particular case; there is no per se rule regarding sample size as called for by the defendant. *See also Morgan*, 53 F. Supp. at 743 ("Stating as a categorical matter that DNA testing cannot be conducted below a certain quantity level is false as a scientific matter, and therefore cannot form the basis of a sound legal argument.").

To rebut the defendant's reliability challenge on this basis, the government offered assurances that its serologist had not observed any stochastic effects. The defendant has had access to the serologist's report and hundreds of pages of underlying data for some time, and has not put forth a contrary proffer or evidence of unreliability in this specific case. Under such circumstances, and in light of the limited scope of the challenge and the general admissibility of DNA comparison testing, the Court finds no need to hold a *Daubert* hearing on this question on the present record.

Thus, the Court **DENIES** the motion. However, the government's serologist Amy Lee is **ORDERED** to submit a declaration within three (3) days of the date of this Order confirming the government's representation regarding the absence of any stochastic effects reflected in the data and observations underlying her report. Nothing is gained by waiting.

### B. Firearm and Ballistics Testing

The defense moves "to exclude any firearms/toolmark identification evidence." (Dkt. No. 89.) Alternatively, the defense requests a *Daubert* hearing as to Erich D. Smith, a physical

4

scientist at the FBI's Firearms/Toolmarks Unit and an anticipated government witness. (*Id.*) The government opposes the motion. (Dkt. No. 102.)

After the shooting at issue in this case, a bullet was recovered from the victim's chest. The murder weapon was never recovered. However, the government obtained a video from the defendant's cell phone featuring what appeared to be a silver firearm. The report describes a three-step process undertaken by Smith.

First, Smith checked the recovered bullet—identified as a ".22 Long Rifle caliber brass washed hollow point . . . fired from a barrel rifled with six grooves, right twist"—against the FBI Laboratory's General Rifling Characteristics ("GRC") database. (Dkt. No. 102, Ex. 1 ("Smith Report") at 1.) The check yielded a list of firearms with GRCs similar to the firearm used to shoot the victim. (*Id.*) This list included pistols by Browning, Ruger, Smith & Wesson, and Walther. (*Id.*)[2]

Second, Smith reviewed the video obtained from the defendant's cell phone and determined the type of firearm apparently depicted in the video "is physically consistent with a .22 Long Rifle caliber Buck Mark pistol[] manufactured by Browning." (*Id.*) However, he indicated it "may not be possible to determine" whether the gun depicted in the video "is a functional firearm, a replica firearm, or a toy firearm." (*Id.* at 2.)

Third, Smith test-fired a .22 Long Rifle caliber Browning pistol, Model Buck Mark, that he obtained from the FBI Laboratory's Reference Firearms Collection. (*Id.* at 1) Comparing the test-fired bullet to the bullet obtained from the victim's body led to Smith's conclusion that the GRCs were "similar," based on an "[a]ssociation examination" comparing "the physical and class characteristics of evidence item[s]." (*Id.* at 1-2.)

Thus, contrary to the defendant's suggestion, the report does *not* involve specific firearm identification, but instead tends to show that the class of firearm apparently depicted in the video recovered from the defendant's cell phone could have been used in the commission of the charged

---

[2] The report notes the GRC database does not include "a comprehensive [set] of all firearms . . . ." (Smith Report at 2.)

5

offense.

The defendant's challenge speaks to the proper weight to be afforded to the evidence, as opposed to its admissibility. For instance, the defendant argues that photographs of the two shell casings—described in the report as reflecting GRC similarities in Smith's opinion—appear dissimilar to a layperson's eye. However, the defendant conceded Smith is highly qualified and did not point out any flaws in Smith's methodology that would render his resulting opinion unreliable. Moreover, Smith's opinion, as reflected in the report, acknowledges the limitations of his conclusions—such as by noting that (1) he could not determine whether the gun depicted in the cell phone video was functional and (2) the comparison only pointed to the *possibility* that a firearm of the class depicted was used during the shooting, admitting the fact that many others may have been used instead. The defendant may certainly present his arguments regarding the proper weight to afford this evidence to the jury and may otherwise challenge Smith's findings during cross-examination. Such concerns are not a proper basis to exclude the evidence or hold a pre-trial *Daubert* hearing on the present record.

For those reasons, the Court **DENIES** the motion.

## II. GOVERNMENT 404(b) MOTION

The government moves to admit the defendant's prior armed robbery felony conviction, as well as the facts underlying the robbery, pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 91.) Specifically, the government seeks to introduce evidence relating to the defendant's June 9, 2008 conviction for violation of California Penal Code section 221, for a 2007 robbery of a Berkeley liquor store involving use of a firearm by at least one of the robbers.[3] The government argues such evidence is relevant to proving "the defendant's intent, plan, preparation, knowledge, absence of mistake and lack of accident." (*Id*. at 2.)[4] The defendant opposes the motion. (Dkt.

---

[3] The defendant was apparently never charged with personally using a firearm in connection with the 2007 robbery.

[4] The government alternatively argues the evidence is admissible pursuant to an aider/abettor theory of liability to rebut the defendant's anticipated defense of a third-party shooter, but does not present sufficient legal authority or argument supporting this position under a 404(b) framework.

No. 97.)

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is nonetheless admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To admit evidence of prior acts, it must: (1) tend to prove a material point at issue; (2) not be too remote in time; (3) be proven with evidence sufficient to show the act was committed; and (4) if admitted to prove intent, be similar to the offense charged. *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). If evidence satisfies Rule 404(b), "the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).

"Rule 404 is simply a specific qualification of the general rule of the admissibility of all relevant evidence." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). In *Curtin*, the Ninth Circuit explained as follows:

> Rule 404(b) is a rule of inclusion—not exclusion—which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge. Once it has been established that the evidence offered serves one of these purposes, the relevant Advisory Committee Notes make it clear that the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence[.]

*Curtin*, 489 F.3d at 944; *see also United States v. Bailey*, 696 F.3d 794, 806 (9th Cir. 2012) ("Indeed, unless the evidence of other acts *only* tends to prove propensity, it is admissible.") (internal quotation marks and alterations omitted).

Reviewing the factors, admission of this evidence on the present record would be improper. It would certainly be relevant as to the defendant's character—and highly prejudicial to the defense. It does not, however, appear sufficiently relevant as to the defendant's "intent, plan, preparation, [or] knowledge."

First, the government has not articulated a clear theory for this evidence's relevance to

7

prove "intent, plan, preparation, [or] knowledge." The mere fact that the defendant might have previously committed an armed robbery of a liquor store does not necessarily render him any more knowledgeable about the ability to use a firearm in connection with a drug-related robbery. It is generally known that a firearm can be used to coerce a victim into handing over objects of value. The defendant certainly did not need to take part in an earlier robbery wherein a firearm was used in order to obtain such knowledge, or to form the intent to undertake, or plan for and carry out, a subsequent robbery. To the extent there may be a reasonable argument for probativeness as to these issues, the government has failed to articulate one.

Second, more than six years intervened between the two incidents. While six years does not render the earlier incident too remote as a matter of law, *see United States v. McCollum*, 732 F.2d 1419, 1424 n.3 (9th Cir. 1984) ("That the prior conviction was 12 years old does not completely negate its probative value."), in this case it further lessens any probative value this evidence might have. *See United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (declining "to adopt an inflexible rule excluding evidence of prior bad acts after a certain amount of time elapses," and noting determinations of remoteness require a fact-specific analysis).

Third, there is no dispute that there is sufficient evidence of the earlier incident generally, where the defendant pled no contest and was convicted. The parties do dispute, however, whether the defendant personally handled a firearm during the earlier incident.

Finally, the two events are insufficiently similar insofar as the government seeks to introduce the earlier incident to prove "intent, plan, preparation, [or] knowledge" based upon the theories alleged.[5] Both involved armed robberies. One took place in a liquor store, with the defendant seeking money. The other occurred in connection with an apparent drug deal, with the defendant allegedly stealing marijuana, and ended with the victim's death.

---

[5] The Court notes that similarity is not always necessary. For example, in cases where the use in question is intended to show "'opportunity, knowledge, preparation or motive,' similarity may or may not be necessary depending upon the circumstances." *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir. 1989) ("For example, if a person commits a second crime in order to cover up the first, proof of the first crime may be used to show motive for the second even though the crimes are dissimilar."). Here, a finding of similarity is necessary based on the proffered bases for the introduction of this evidence.

8

While the Court finds these factors alone warrant exclusion of the evidence to show "intent, plan, preparation, [or] knowledge," it also finds that such introduction would be impermissible under Federal Rule of Evidence 403, as any limited probative value to prove those issues is substantially outweighed by a danger of unfair prejudice.

Thus, the Court **DENIES IN PART** the motion, to the extent it seeks introduction of such evidence to show "intent, plan, preparation, [or] knowledge." As the Rule 404(b) analysis is necessarily dependent on its proffered use at trial, the Court **RESERVES** on the issue of the appropriateness of introducing such evidence to show "absence of mistake and lack of accident," pending the assertion of such a defense at trial. *See United States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000) ("At the very least, the prior conviction was admissible to rebut [the defendant's] claimed innocent motives for his presence [at the scene of the crime].") (quoting *United States v. Sager*, 227 F.3d 1138, 1148 (9th Cir. 2000)).

### III. REMAINING GOVERNMENT MOTIONS

For the reasons stated on the record at the June 12, 2015 pre-trial conference, the Court **GRANTS** the government's motions to admit (1) the defendant's 2008 conviction, for impeachment pursuant to Federal Rule of Evidence 609, should the defendant testify at trial (Dkt. No. 93); and (2) certain co-conspirator statements (Dkt. No. 100).

### IV. CONCLUSION

For the reasons stated above, the Courts rules as follows:

1. The defense motion to exclude the DNA evidence and request for a *Daubert* hearing is **DENIED**, and the government expert shall file the requisite declaration as provided herein;
2. The defense motion to exclude firearms/toolmark evidence and request for a *Daubert* hearing is **DENIED**;
3. The government's Rule 404(b) motion is **DENIED IN PART**, and the Court **RESERVES** as to the use of such evidence to rebut a defense of accident or mistake;
4. The government's Rule 609 motion is **GRANTED**; and
5. The government's motion to admit certain co-conspirator statements is **GRANTED**.

9

This Order terminates Docket Numbers 87, 89, 91, 93, 100.

**IT IS SO ORDERED.**

Dated: June 22, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**